In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00044-CV


______________________________




SIMMONS THEODORE YLIYAH NA'BI, Appellant



V.



LYNWOOD COOK, SUZZAN FLEMING,


KEN KUYKENDALL AND CHARLOTTE WEST, Appellees



 


On Appeal from the 3rd Judicial District Court


Anderson County, Texas


Trial Court No. 3-40708




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Simmons Theodore Yliyah Na'bi has filed suit against Lynwood Cook, Suzzan Fleming, Ken
Kuykendall, and Charlotte West. (1) Na'bi is imprisoned in the Goree Unit of the Texas Department
of Corrections in Huntsville. The suit alleged that the defendants conspired together to single out
Na'bi and other African-Americans in the unit by discontinuing their medically prescribed clipper
shave passes. On its own motion, the trial court dismissed Na'bi's lawsuit without prejudice because
"the claim is substantially similar to previous claims brought by the Plaintiff and realistic chance of
ultimate success is slight." Na'bi now appeals that dismissal. We affirm.

 Chapter 14 of the Texas Civil Practice and Remedies Code governs all civil lawsuits (except
for those under the Texas Family Code) brought by Texas inmates in a state district, county, justice
of the peace, or small claims court and in which the inmate files an affidavit or unsworn declaration
of the inability to pay the court costs associated with filing litigation. Tex. Civ. Prac. & Rem. Code
Ann. § 14.002 (Vernon 2002). We review a trial court's dismissal of such a lawsuit (filed pursuant
to Chapter 14 of the Texas Civil Practice and Remedies Code) under an abuse of discretion standard. 
Clark v. Unit, 23 S.W.3d 420, 421 (Tex. App.--Houston [1st Dist.] 2000, pet. denied). A trial court
abuses its discretion when its decision is outside the zone of reasonable disagreement or when the
court's decision is made without reference to guiding rules or principles. Id.; see also Breckenridge
v. Nationsbank of Tex., N.A., 79 S.W.3d 151, 157 (Tex. App.--Texarkana 2002, pet. denied).

 A trial court may, on its own motion, dismiss an inmate's civil lawsuit under certain
circumstances. One such instance when sua sponte dismissal is permitted is when the trial court
finds the inmate's current lawsuit "is substantially similar to a previous claim filed by the inmate
because the claim arises from the same operative facts." Tex. Civ. Prac. & Rem. Code Ann.
§ 14.003(b)(4) (Vernon 2002). 

 In this case, Na'bi filed the affidavit required by Article 14.004 of the Texas Civil Practice
and Remedies Code. We have reviewed that affidavit, and Na'bi has filed eight lawsuits since 1999, 
four of which (including this one) involved his clipper shave pass. No abuse of discretion has been
shown.

 We affirm the judgment of the trial court.



 Bailey C. Moseley

 Justice

 

Date Submitted: August 27, 2008

Date Decided: August 28, 2008
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.



lso J.F.C., 2002 Tex. LEXIS 215, at *15. If the answer to this
question is yes, then we must overrule the factual sufficiency point. 

 We recognize that the natural right existing between parents and their children is one of
constitutional dimension. See In re J.W.T., 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right
to "the companionship, care, custody, and management" of his or her children is a constitutional
interest "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59
(1982) (quoting Stanley v. Illinois, 405 U.S. 645, 651 (1972)). Therefore, we strictly scrutinize both
the termination proceedings and the involuntary termination statutes in favor of the parent. Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).

C. Analysis 

 To terminate parental rights in Texas, the evidence must establish: (1) a statutory ground for
termination; and (2) the termination is in the child's best interest. Tex. Fam. Code Ann.
§ 161.001(1). On appeal, Rogers focuses on the statute's first prong, contending the evidence
supporting a statutory ground for termination is both legally and factually insufficient. Rogers does
not contend termination of his parental rights is not in N. R.'s best interest. 

 In its petition, the Department alleged five separate grounds under Tex. Fam. Code Ann.
§ 161.001. (1) The trial court found there was clear and convincing evidence supporting each of the
Department's alleged grounds. Only one statutory ground is required to terminate parental rights
under Section 161.001. See, e.g., In re S.F., 32 S.W.3d 318, 320 (Tex. App.-San Antonio 2000, no
pet.) (concluding "only one finding alleged under section 161.001(1) is necessary to a judgment of
termination"). Therefore, we will affirm the trial court's order if there is both factually and legally
sufficient evidence on any statutory ground on which the trial court relied in terminating Rogers'
parental rights. See id.

 1. Tex. Fam. Code Ann. § 161.001(1)(D), (E)

 In his first two points of error, Rogers challenges the factual sufficiency of the evidence
supporting a finding under Tex. Fam. Code Ann. § 161.001(1)(D), (E). Specifically, he contends
the evidence is factually insufficient to show: (1) he knowingly placed or knowingly allowed N. R.
to remain in conditions or surroundings that endangered her physical or emotional well-being; or (2)
he engaged in conduct or knowingly placed N. R. with persons who engaged in conduct which
endangered N. R.'s physical or emotional well-being. Because of the close evidentiary relationship
of these two grounds, we will review them together.

 "Endangerment" is an element of both subsections (D) and (E). In an involuntary termination
proceeding, "endanger" means conduct that is more than a threat of metaphysical injury or the
possible ill effects of a less than ideal family environment. Tex. Dep't of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987). However, the child does not need to suffer actual physical injury to
constituted endangerment. Id. "Rather, 'endanger' means to expose to loss or injury; to jeopardize." 
Id.; see also In re M.C., 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Endangerment can occur
through both the acts and omissions of the parent. Phillips v. Tex. Dep't of Protective & Regulatory
Servs., 25 S.W.3d 348, 354 (Tex. App.-Austin 2000, no pet.). Neglect can be just as dangerous to
a child's well-being as direct abuse. M.C., 917 S.W.2d at 270.

 Tex. Fam. Code Ann. § 161.001(1)(D) applies only to the acceptability of a child's living
conditions or surroundings; it does not apply to the conduct of the parent toward the child. In re
S.H.A., 728 S.W.2d 73, 84 (Tex. App.-Dallas 1987, writ ref'd n.r.e.). Under subsection (D), it must
be the environment itself that causes the child's physical or emotional well-being to be endangered,
not the parent's conduct. Id. at 84-85. Thus, subsection (D) can only be utilized as a ground for
termination if the child is placed in conditions or surroundings that are themselves dangerous to his
or her physical or emotional well-being; parental conduct alone is insufficient under this subsection. 
See In re T.L.H., 630 S.W.2d 441, 446 (Tex. App.-Corpus Christi 1982, writ dism'd w.o.j.)
(interpreting predecessor statute with identical language). The environment must pose a real threat
of injury or harm to the child, Williams v. Texas Department of Human Services, 788 S.W.2d 922,
926 (Tex. App.-Houston [1st Dist.]1990, no writ), overruled on other grounds, In re J.N.R, 982
S.W.2d 137, 143 (Tex. App.-Houston [1st Dist.] 1998, no pet.), and there must be proof of a direct
causal connection between the environment, in which the child is placed or allowed to remain and
the resulting danger to the child's physical or emotional well-being to warrant termination under
subsection (D). Ybarra v. Tex. Dep't of Human Servs., 869 S.W.2d 574, 577-78 (Tex. App.-Corpus
Christi 1993, no writ); S.H.A., 728 S.W.2d at 85. However, it is not necessary for the parent to have
certain knowledge that an actual injury is occurring; it is enough that the parent was aware of the
potential for danger to the child in such environment and disregarded that risk. In re Tidwell, 35
S.W.3d 115, 119-20 (Tex. App.-Texarkana 2000, no pet.).

 By contrast, when reviewing a finding under Tex. Fam. Code Ann. § 161.001(1)(E), the
focus is exclusively on the parent's conduct, not the child's environmental surroundings. In re P.S.,
766 S.W.2d 833, 835 (Tex. App.-Houston [1st Dist.] 1989, no writ). Subsection (E) does not
require there be danger of physical harm; proof of conduct that endangers a child's emotional well-being alone is sufficient. Tex. Fam. Code Ann. § 161.001(1)(E); S.H.A., 728 S.W.2d at 85. The
cause of the danger to the child's physical or emotional well-being, however, must be the parent's
conduct by way of actions, inactions, or omissions. See id. But the specific danger to the child's
well-being need not be established as an independent proposition; it may be inferred from parental
misconduct. See Boyd, 727 S.W.2d at 533. In addition, it is not necessary that the conduct was
directed at the child at issue or that the child actually suffered injury. Id. "Endanger" in this context
means "to expose to loss or injury; to jeopardize." Id. Thus, there is no requirement of any "actual
and concrete" threat of injury to the child's physical or emotional well-being. Id.; Dir. of Dallas
County Child Protective Servs. Unit of Tex. Dep't of Human Servs. v. Bowling, 833 S.W.2d 730, 733
(Tex. App.-Dallas 1992, no writ). In short, subsection (E) is satisfied simply by proof that a parental
course of conduct endangered a child's physical or emotional well-being. Boyd, 727 S.W.2d at 534;
In re R.D., 955 S.W.2d 364, 368 (Tex. App.-San Antonio 1997, pet. denied); Bowling, 833 S.W.2d
at 733. 

 a. The Evidence

 The following evidence was presented at trial relevant to both subsections (D) and (E) of the
Texas Family Code.

 Several witnesses testified of Rogers' propensity for extensive physical abuse to both N. R.
and others. Barbara Walker, a Child Protective Services (CPS) caseworker assigned to investigate
N. R.'s case, testified CPS had received fourteen separate reports on the family; four classified as
"reason to believe" physical abuse. Walker testified there would be a substantial risk to N. R.'s
physical safety if she went back to Rogers' home. Walker testified that part of CPS's concern for
N. R.'s safety was based on case files involving another child, D. H. These case files showed Rogers
had his parental rights terminated to D. H. for extensive physical abuse. 

 In addition to Walker's testimony, Mark May, Rogers' former roommate, testified. According
to May, he witnessed Rogers strike N. R., causing her to fall from a freezer and fracture her arm. 
May testified that, before Rogers struck N. R., Rogers had been "shooting up" in the bathroom and
was under the influence of oxycontins. In addition, May testified that, while N. R. lived with Rogers
and in N. R.'s presence, May purchased drugs from Rogers "every day."

 Julia Ingram, Rogers' biological daughter, also testified at trial about extensive physical abuse
inflicted by Rogers to her and others. Specifically, Ingram testified Rogers physically abused her
brother Randall by hitting him with sticks, beating his head against a tree, and whipping him with
a telephone cord. She further testified Rogers on one occasion beat her with a belt buckle, drawing
blood. On several other occasions, she witnessed Rogers beat her mother and other siblings. Ingram
also testified Rogers has an uncontrollable temper, especially when he is drinking or under the
influence of drugs. According to Ingram, while she lived with Rogers, he drank almost every day. 

 Hodge also testified Rogers is violent, especially when he drinks or takes drugs. During her
testimony, she recounted a time when she witnessed Rogers whip D. H. with his belt for three hours,
causing bruising.

 Finally, two experts testified regarding N. R.'s physiological well-being. Each concluded
N. R.'s behavior was consistent with a child coming from an abusive environment. 

 In addition to this testimony, the record contains an extensive criminal history on Rogers.
Rogers has been arrested twenty times and charged with several different offenses: one charge each
for kidnapping, sexual abuse, threat, dangerous drugs, public order crimes, and a weapons offense;
ten times for assault; three times for driving while intoxicated; and several other various offenses. 
The record summary shows convictions for assault (two), weapons offense, DWI, and reckless
conduct.

 Based on the above, we conclude the evidence before the fact-finder was both legally and
factually sufficient. Specifically, under subsection (D), a fact-finder could readily have reached the
necessary firm conviction or belief that N. R. was placed and allowed to remain in an environment
that endangered both her physical and emotional well-being. Likewise, under subsection (E), a
fact-finder could readily have reached the necessary firm conviction or belief that Rogers' conduct,
including selling drugs and excessive physical abuse to N. R. and others, endangered N. R.'s physical
and emotional well-being. We also conclude a fact-finder could readily have reached the necessary
firm conviction or belief that the extreme step of termination of Rogers' parental rights was in N. R.'s
best interest. 

 2. Other Insufficiency Points Raised by Rogers

 Having found the evidence both legally and factually sufficient to support the judgment based
on Tex. Fam. Code Ann. § 161.001(1)(D) and (E), we do not need to consider whether the evidence
was sufficient to support the judgment based on Tex. Fam. Code Ann. § 161.001(1)(C), (F), and
(Q). 




 We affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: March 20, 2003

Date Decided: March 21, 2003

 
1. In its petition, the Department alleged Rogers violated Tex. Fam. Code Ann.
§ 161.001(1)(C), (D), (E), (F), and (Q) (Vernon 2002).